**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EARL RODGERS, # 468515,

       Petitioner,

v.                                                            Case Number: 08-CV-12057
                                                               Honorable Nancy G. Edmunds

THOMAS BIRKETT,

       Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING
AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Earl Rodgers, currently incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan,[1] filed this *pro se* habeas petition challenging his convictions for (1) first-degree premeditated murder, MICH. COMP. LAWS § 750.316, (2) car jacking, MICH. COMP. LAWS § 750.529a, (3) armed robbery, MICH. COMP. LAWS § 750.529, and (4) felony firearm, MICH. COMP. LAWS § 750.227b, imposed by a Wayne County, Michigan, circuit court jury. On June 29, 2005, Rodgers was sentenced to life in prison for the car-jacking, armed-robbery, and murder

---

[1] Petitioner was incarcerated at the Standish Maximum Correctional Facility in Standish, Michigan, when he originally filed his habeas petition; however, he has since been transferred to the Baraga Maximum Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; see also *Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

convictions, and the mandatory two-year consecutive sentence for the felony-firearm conviction. In his *pro se* pleadings, Rodgers alleges: (1) he was denied due process when his interview with the police was not videotaped or otherwise recorded, (2) he was denied due process when the prosecutor introduced a photograph of the deceased, (3) he was denied due process when the prosecutor introduced evidence of flight, and (4) his trial counsel was ineffective for failing to raise the errors noted. For the reasons stated below, the Court will deny the petition. The Court will also decline to issue Rodgers a certificate of appealability and will deny him leave to proceed on appeal *in forma pauperis*.

## II. BACKGROUND

Rodgers's troubles in this case arise from the shooting death of seventy-four-year-old Robert Reynolds, during an armed robbery and car jacking, which occurred in a church parking lot in Detroit, Michigan on September 12, 2004. Reynolds, who was a Deacon at the Trinity Presbyterian Church in Detroit, was walking to his car in the church parking lot when Rodgers approached him with a gun. The prosecution presented evidence that Rodgers gave a statement to the police in which he admitted shooting Reynolds. The defense presented an alibi defense and denied giving the statement that the prosecution offered, claiming that the statement was fabricated.

Prior to trial, an evidentiary hearing was held in which Sergeant Kenneth Gardner testified about Rodgers's statement. According to Sergeant Gardner, Rodgers told him that he tried to steal the car with a screwdriver, when a man grabbed him. He said his co-defendant, Emanuel Williams, threw him a gun, which he shot in the air. He said the man then grabbed him again, at which point, he shot him in the shoulder, and then grabbed his keys and stole the car. Rodgers told the Sergeant that he shot the man because he

2

grabbed him. No videotapes or audiotapes were made during the interview. The trial court concluded that Rodgers's statement was voluntary.

Trial began on May 31, 2005 and concluded on June 8, 2005. Rodgers was tried along with co-defendant Williams but with separate juries. After Rodgers's jury was sworn, the trial court addressed the issue of the prosecutor wanting to use a picture of Reynolds taken while he was alive. Because Rodgers claimed that Reynolds had struggled with him and had a gun, the trial court found the picture to be relevant.

Robert Johnson, one of the witnesses to the incident, testified that both he and Reynolds were in the parking lot heading to their respective cars, when he saw a car pull up behind Reynolds's car. Johnson said when he was close to his own car, he heard Reynolds say "help me[,]" [t]his fellow got a gun pointed at me!" Trial Tr. vol. II, 206, June 1, 2005. Johnson said he could see a man pointing a gun at Reynolds's head. He backed away and ran to a gas station for help. He then heard a shot. As he was returning to the parking lot, he saw Reynolds coming toward him, holding his side. Reynolds told him that he was shot and that his car was stolen. Reynolds then collapsed. Johnson identified Rodgers in court as the man holding the gun.

John Wilson, another witness and member of the church, testified that he saw a car next to Reynolds's car on the day in question, and described the passenger as a young, African American, who appeared to have a weapon. He said he heard two shots.

Jacqueline Harris testified that, on the day in question, she saw Rodgers driving in a blue car. She said she recognized him from the neighborhood. Harris said Rodgers threw some papers out of the window of the car, which she picked up and threw in the trash. However, after watching the news that night, she took the papers out of the trash

3

because she recognized a name on one of the papers as that of Reynolds; one of the papers was a car insurance bill with Reynolds's name on it. Harris said she took the papers to the police.

The police recovered two .22 caliber shell casings from the crime scene. The slug taken from Reynolds at the morgue was a .22 caliber. The medical examiner testified that the cause of Reynolds's death was one contact gunshot wound to the chest. He said the muzzle of the gun had been held in contact with Reynolds's skin.

Sergeant Gardner testified regarding Rodgers's statement. The prosecution then rested.

Paris Varner, Rodgers's older sister, testified that, in the afternoon on the day in question, Rodgers was in front of his ex-girlfriend's house, Dominique Reynolds, sitting in the car. She testified she remembered that because she was supposed to be going to her cousin's house to pick up some money and he was keeping track of the time.

Rodgers testified on his own behalf. He acknowledged being at the police station but denied that Sergeant Gardner had read him his rights. He said he told the Sergeant that he could not read. He denied shooting Reynolds. In fact, Rodgers denied the entire story recited in his statement. Rather, he said that, at the time of the shooting, he was in front of his girlfriend's house, sitting in a car, playing with her baby.

The defense rested.

The prosecutor then asked for a jury instruction to be given on flight. The trial court agreed and said that such an instruction was appropriate since there was some evidence demonstrating that Rodgers ran away. Neither counsel objected.

The jury found Rodgers guilty as stated.

Following his sentencing, Rodgers filed his direct appeal with the Michigan Court of Appeals, raising the following claims:

> I. [Rodgers] was deprived of his Fifth and Fourteenth Amendment rights of due process and his Sixth Amendment right to a fair trial when his interview with the police was not videotaped or otherwise recorded.
>
> II. [Rodgers] was deprived of his Fifth and Fourteenth Amendment rights of due process when the prosecutor introduced a photograph of the deceased into evidence.
>
> III. [Rodgers] was deprived of his Fifth and Fourteenth amendment rights of due process when the prosecutor introduced evidence of flight.
>
> IV. [Rodgers] was deprived of his Fifth and Fourteenth Amendment rights of due process and his Sixth Amendment right to effective assistance of counsel when his counsel failed to raise objections to the errors in issues I and III.

The Court of Appeals affirmed Rodgers's convictions and sentences in an unpublished opinion. *People v. Rodgers*, No. 263946, 2007 WL 258402 (Mich. Ct. App. 2007). Subsequently, Rodgers filed an application for leave to appeal the Court of Appeals's decision, raising the same claims. On May 30, 2007, the Michigan Supreme Court denied the application. *People v. Rodgers*, 478 Mich. 872, 731 N.W.2d 728 (2007) (Cavanagh, J., would grant leave to appeal to consider the videotaping issue, and Kelly, J., would grant leave to appeal).

Rodgers neither filed a post-conviction motion with the state court nor a writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition on May 9, 2008, raising the same claims raised in the state appellate courts. The petition was signed and dated May 6, 2008.

5

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state court decision either unreasonably

6

extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.*, at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

## IV. DISCUSSION

### A. Claim I–Constitutional Right to a Recorded Interrogation

In his first claim, Rodgers argues that his due process rights were violated when the police failed to record his statements during a police interview. The Supreme Court has not held that criminal suspects have a constitutional right to an electronic recording of interrogations. *Caraway v. Jackson*, No. 05-74817, 2008 US Dist. LEXIS 14627 (E.D. Mich. Feb. 27, 2008).

The Michigan Court of Appeals addressed, and rejected this issue, stating:

> Defendant first argues that the police violated his constitutional right to due process when the police failed to make an audio or visual recording of his police interview. Because defendant did not object to the admission of his statement on this ground below, this issue is not preserved. Therefore, we review the issue for plain error affecting defendant's substantial rights.
>
> Defendant does not cite any federal authority recognizing a requirement that custodial statements be electronically recorded as an element of due process under the federal constitution. Although some states

7

> have recognized such a requirement under their respective state constitutions, see, e.g., *Stephan v. State*, 711 P.2d 1156 (Alas, 1985), this Court has squarely held that the Due Process Clause of the Michigan Constitution, Const 1963, art 1, § 17, does not require audio or visual recordings of custodial interrogations. Accordingly, defendant has not established a plain error on this basis.

*Rodgers*, 2007 WL 258402, at *1 (some citations omitted).

Rodgers relies on *Arizona v. Youngblood*, 488 U.S. 51 (1988), for support for his position. However, *Youngblood* is inapposite to Rodgers's case. *Youngblood* stands for the proposition that a bad faith failure to preserve exculpatory evidence can violate an individual's Fourteenth Amendment Due Process rights but the Supreme Court is silent about requiring the recording of a custodial interrogation. *Id.* at 58. Rodgers's reliance upon state constitutional requirements as to the recording of custodial interrogations are misguided.

Rodgers claims that there were distinct issues as to whether he was read his rights, whether he could read at all, and whether the statements that he made were even attributed to him. A recording could have made all of those issues clear. However, the Court finds that Rodgers does not allege any facts under *Youngblood* which would persuade this Court that the police acted in bad faith by not recording the interview. Therefore, Rodgers's due process rights were not violated when his statements to the police were not recorded.

Furthermore, since there is no federal law to apply, the state courts' adjudications of this issue cannot result in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Court therefore concludes that Rodgers is not entitled to habeas relief regarding this claim.

## B. Claim II–Display of Picture During Trial

In his second habeas claim, Rodgers alleges that his due process rights were violated by the introduction and display of prejudicial pictures of Reynolds during trial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state-court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Stephenson v. Renico*, 280 F.Supp.2d 661, 666 (E.D. Mich. 2003).

The Michigan Court of Appeals addressed this issue, and rejected it, stating:

> Next, defendant argues that the trial court erred by admitting a photograph depicting the victim while still alive. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. Defendant argues that the photograph was not relevant under MRE 401 and, even if relevant, that it's probative value was substantially outweighed by the danger of unfair prejudice under MRE 403. Under the rules of evidence, relevant evidence is admissible. Evidence is relevant if it tends to make the existence of a fact at issue more or less probable than it would be without the evidence. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock."
>
> Defendant claimed in his statement that the victim grabbed him, swung him around, and pulled a gun out on him first. The trial court did not abuse its discretion in determining that the photograph was relevant to assist the jury in deciding whether the victim may have been the aggressor and initiated a struggle with defendant. Further, defendant has not established that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.

9

*Rodgers*, 2007 WL 258402, at *1-2 (citations omitted).

The Court of Appeals determined that allowing the picture of the victim to be admitted into evidence was not an abuse of discretion. A habeas review is very deferential to the findings of the lower state courts. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Without, at a minimum, an abuse of discretion, there cannot be a violation of fundamental fairness. Rodgers must show that "the state trial court's evidentiary ruling was 'so egregious' that it effectively denied [him] a fair trial. *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009) (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

Even if Rodgers's claim was cognizable on federal habeas review, the admission of the photograph was not fundamentally unfair. The state-court determination, in light of the proffered defense, that the admission of the photograph was relevant to assist the jury in deciding whether Reynolds initiated a struggle with Rodgers, was not fundamentally unfair. Furthermore, the Sixth Circuit has found no due process violation in far more extreme cases involving photographs of murder victims. *See*, e.g. *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (holding that admission of photographs depicting murder victim's severed head, her severed head held near her torso and severed breast, and her torso with her severed head and severed breast replaced on torso, did not deprive defendant of fair trial, and thus did not warrant federal habeas relief).

Against that backdrop, this Court concludes that the state courts' adjudications of this issue was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. Rodgers is not entitled to habeas relief regarding this claim.

### C. Claim III–Constitutionality of Flight Instruction

In his next claim, Rodgers asserts that the prosecutor's introduction of evidence of

flight violated his right to due process.  This claim is barred from habeas review by Rodgers's state-court procedural default and lacks merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991).  In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default.  *Id.* at 85.  In such a case, a federal court must determine not only whether a petitioner has failed to comply with the state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.  "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989) (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (quoting *Michigan v. Long*, 463 U.S. 1032, 1041 (1983)).  The last explained state-court judgment is reviewed to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In denying relief on Rodgers's jury instructions claim, the Court of Appeals relied upon a state procedural bar: Rodgers's failure to object to those matters at trial.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *People v. Carines*, 460 Mich. 750 (1999); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Additionally, a state

court does not waive a procedural default by determining if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain-error review does not constitute a waiver of state procedural default rules. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). In this case, the Michigan Court of Appeals denied these claims based upon Rodgers's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753. In this case, Rodgers alleges ineffective assistance of trial counsel as cause to excuse his default.[2] He, however, cannot establish that counsel erred or that he was prejudiced as a result of instructional error.

The Michigan Court of Appeals adjudicated this claim as follows:

> Defendant also argues that the trial court erroneously instructed the jury on flight. Because defendant did not object to the trial court's flight instruction at trial, we review this issue for plain error affecting defendant's substantial rights. Evidence of flight is generally admissible, although it is insufficient by itself to sustain a conviction. A defendant's flight may be evidence of the defendant's consciousness of guilt, but can also be consistent with innocence, such as acting out of fear. It is for the jury to decide what caused the defendant to flee.
>
> Contrary to defendant's argument, evidence of flight can include leaving the scene of a crime. In this case, defendant gave a statement to the police in which he suggested that he shot the victim in self-defense, after the victim first assaulted defendant and produced a gun. The evidence showed that defendant subsequently left the scene. These facts support the trial court's flight instruction which appropriately informed the jury that it was to decide whether the evidence, if true, showed that defendant left the scene because of a consciousness of guilt, or for innocent reasons, such as panic,

---

[2]The Court will reject Rodgers's related ineffective assistance of counsel claim. See section D, *infra*.

12

mistake, or fear. There was no plain error in instructing the jury on flight.

*Rodgers*, 2007 WL 258402, at *2 (citations omitted).

The Court of Appeals's plain-error review of Rodgers's instructional error for manifest injustice does not constitute a waiver of the procedural default. *Paprocki*, 869 F.2d at 285. To establish cause to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may be cause sufficient to excuse a procedural default. However, attorney error that falls short of constitutional ineffective assistance of counsel does not constitute "cause" for a procedural default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

In this case, the Court finds that Rodgers's counsel was not ineffective for failing to raise a futile objection to the proper flight instruction. The Sixth Circuit has rejected habeas corpus challenges to the very instruction given in this case, at least when there was some evidence of flight or hiding. *Burton v. Renico*, 391 F.3d 764, 778-79 (6th Cir. 2004).

Moreover, an erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 ( quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp*, 414 U.S. at 146). A jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Johnson v. Smith*, 219 F.Supp.2d 871, 882 (E.D. Mich. 2002).

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F.2d 1056, 1062 (6th Cir. 1990) (internal citations omitted). Thus, the giving of a flight instruction did not violate Rodgers's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether Rodgers did, in fact, attempt to flee the scene and if so, what state of mind such flight evinced. *See Burton*, 391 F.3d at 778; *See also United States v. Carter*, 236 F.3d 777, 792, n. 11 (6th Cir. 2001) (not an abuse of discretion for the district court to give a flight instruction, though defendant may have had a reason to flee from officers other than guilt of the criminal charge, where the instruction stated that evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment).

Additionally, the United States Supreme Court has stated that "it is the rare case in which an improper instruction will justify reversal of a criminal conviction, when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state-court conviction is even greater than the showing required in a direct appeal.

In this case, the Court of Appeals concluded that it was proper for the trial court to give the flight instruction, because there was evidence to show that Rodgers ran away after shooting the victim and stealing the victim's car. The giving of a flight instruction did not violate Rodgers's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations

as to whether Rodgers did attempt to flee the scene and what state of mind such flight evinced.

Against that backdrop, the Court concludes that the Court of Appeals's decision regarding this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Rodgers is therefore not entitled to habeas relief on this claim.

### D. Claim IV–Ineffective Assistance of Counsel

In his fourth and last habeas claim, Rodgers argues that he was denied his right to the effective assistance of counsel when counsel failed to raise the above-stated issues presented in this petition. The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, Rodgers must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be

15

considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Applying the *Strickland* standard, the Michigan Court of Appeals addressed Rodgers's claim of ineffective assistance as follows:

> Finally, defendant argues that trial counsel was ineffective for not objection to the admission of his police statement on the ground that it was not electronically recorded, and for failing to object to the jury instruction of flight. Because defendant did not raise this issue in an appropriate motion in the trial court, our review is limited to errors apparent from the record.
>
> In light of our conclusion that the police were not required to electronically record defendant's custodial statement as a matter of law, counsel was not ineffective for failing to object to the admission of defendant's statement on this ground. Similarly, the trial court's flight instruction was supported by the evidence and, therefore, any objection would have been futile. Thus, trial counsel was not ineffective. Because this issue can be decided on the existing record, remand for an evidentiary hearing is not warranted.

*Rodgers*, 2007 WL 258402, at *2 (citations omitted).

The Court will address Rodgers's ineffective-assistance-of-counsel claims seriatum.

### 1. Failure to Request Recording of Police Interview

Rodgers claims that his counsel should have requested a recording of the police interview because the statements that were admitted during the interview were not properly

16

attributed to him, it was not certain whether he could read the written waiver of rights that he signed, and whether he understood what his rights were in general. As stated, there is neither a federal right to a recorded police conversation nor is it required under the laws of the state of Michigan. Counsel's performance cannot be held to be deficient if there was no meritorious motion or request to be made before the start of the interview. This Court cannot find counsel deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328.

### 2. Failure to Object to Admission of Flight Evidence

Rodgers also claims that his counsel should have objected to the admission of flight evidence as well as the flight instruction given by the judge to the jury. As noted, state law determinations of evidentiary issues are given deference by the district court under habeas review. The Court of Appeals determined that the flight evidence and instruction were not an abuse of discretion because flight evidence is not dispositive of guilt or innocence. This Court finds that the Court of Appeals properly determined that the evidence was admissible and that the instruction was proper. Therefore, counsel's failure to object to its admission or the given instruction on flight would be futile. For those reasons, counsel's performance was not deficient. It is difficult to claim ineffective counsel for a failure to object to a jury instruction. *See Davis v. Morgan*, 89 F.App'x 932, 936-37 (6th Cir. 2003) (petitioner could not establish that counsel was ineffective for failing to object to self-defense instruction where state court found that instruction was proper under state law). Because Rodgers could not prove that counsel's performance was deficient under either claim, the judgment of the Court of Appeals was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. See section C, *infra*.

17

### E. Certificate of Appealability

The Court will also decline to issue a certificate of appealability (COA) to Rodgers. A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its assessment of the substantive or procedural rulings debatable or wrong. The Court thus declines to issue Petitioner Rodgers a COA. Nor should he be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

### V. CONCLUSION

For the reasons stated, this Court concludes that Petitioner Rodgers is not entitled

18

to federal habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court declines to issue Rodgers a certificate of appealability and denies him leave to proceed on appeal *in forma pauperis*.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 14, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 14, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager